IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KIMBERLY BROWN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:14-CV-2005-D |
| VS. | § | |
| | § | |
| FMC TECHNOLOGIES, INC., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
_____ AND ORDER _____

A terminated employee who was involved in a failed romantic relationship at work brings this lawsuit alleging claims for a sexually hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Defendant moves for summary judgment and for leave to file a first amended answer. Concluding that a reasonable jury could not find in plaintiff's favor on either of her claims, the court grants defendant's motion for summary judgment, denies as moot defendant's motion for leave to file a first amended answer, and dismisses this action with prejudice.

I

Plaintiff Kimberly Brown ("Brown") began working at defendant FMC Technologies, Inc. ("FMC") in April 2013 as a Human Resources Manager for the Global Group in the Western Region Subsea.[1] Her direct supervisor was Geir Arne Skau ("Skau"). In May 2013

_____

[1] In recounting the factual background, the court summarizes the evidence in the light most favorable to Brown as the summary judgment nonmovant and draws all reasonable inferences in her favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins.*

she began dating another FMC employee, Dontai Johnson ("Johnson"), who worked as an HR Manager for FMC's Corporate Group.  Brown and Johnson worked in different departments within FMC's HR group and had offices in different buildings.  They maintained their relationship outside the workplace, and they rarely interacted in the workplace regarding business issues.

According to Brown, sometime in late June 2013 she wanted to end her relationship with Johnson, but he did not.  Johnson allegedly told her that he had a friend at FMC who was a senior employee and could influence her career if she attempted to end the relationship.

In July 2013 Brown discovered that Johnson was romantically involved with Nichole King ("King"), who was not an FMC employee.  Brown continued to see Johnson socially after learning about his involvement with King.  She contends that at the end of July she again expressed the desire to end her relationship with Johnson, and that he reluctantly agreed.  In August 2013 Brown took a home pregnancy test, which indicated that she was pregnant.  She scheduled an appointment with her physician to confirm her pregnancy.[2]

That same month, King began sending emails and text messages to Brown's work telephone asking her about her relationship with Johnson.  The two also encountered each other unexpectedly in the parking garage at the FMC Corporate HR location.  King

_____

*Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[2]In her summary judgment response, Brown sets out additional facts regarding conversations that occurred between her and Johnson, but they cannot be found on the pages of her or FMC's appendix that she cites.  Accordingly, the court does not include them in its factual recitation.

confronted Brown about her relationship with Johnson.  Brown walked away from King and immediately reported the incident to FMC's security guard, who recommended that Brown file for a protective order against King.  Brown also reported the incident to her supervisor, Skau.  She told Skau that King was the girlfriend of her former boyfriend, and that King had sneaked into the FMC parking garage.  Brown requested leave to file a request for a restraining order, which Skau approved.  Brown did not disclose to Skau that the former boyfriend was Johnson, or that she was being sexually harassed by Johnson or King.

On September 11, 2013 FMC received an anonymous complaint regarding Brown and Johnson's relationship through its Ethics Point Hotline.  According to the complainant, Brown and Johnson were dating, and their relationship was not in the best interests of the company.  FMC assigned Mark McDonald ("McDonald"), the Corporate Human Resources Director, to investigate the complaint.  Brown was not aware of the complaint.

On or about September 16, 2013 Brown was attending a meeting in FMC's HR Corporate Department when she ran into Johnson.  Johnson requested that the two meet to discuss Brown's pregnancy, and they met later that day at a gas station near Johnson's office.  Unbeknownst to Brown, Johnson recorded all or substantially all of their conversation.  Brown contends that she met with Johnson to discuss her pregnancy and whether Johnson wanted to be involved in the child's life.  The recording, however, would permit a reasonable jury to find that, during the conversation, Johnson attempted to end the relationship, and that Brown became confrontational.  Brown maintains that the recording is incomplete, and that Johnson's apparent willingness to end their relationship contradicted previous conversations,

text messages, and voicemail messages that they had exchanged.

While Brown and Johnson were meeting at the gas station, King called Johnson's personal phone. Brown maintains that Johnson threw the phone at her and told her to answer it. After Brown answered the call, she talked with King about her relationship with Johnson. Brown alleges that Johnson was upset that she had answered his phone and that he had thrown his work phone at her. Brown asserts that when Johnson threw his work phone at her, she was unaware that it had slid into her pocket. Brown did not return either of Johnson's phones to him after the meeting.

Following the meeting with Johnson, Brown returned to FMC's Corporate Office to attend a business meeting with another coworker, Alyson Jones ("Jones"), on the sixth floor of the office building in which Johnson worked. Brown attempted to access the sixth floor, but her badge did not work. Brown alleges that Johnson directed a coworker to deny her access to the sixth floor. Brown informed Jones that she did not have access to the sixth floor, and Jones changed the meeting to another location.

After the meeting with Jones, Brown informed Skau of her relationship with Johnson. On the same day, McDonald and Gabriel Grimes ("Grimes"), FMC's Regional Security Manager, met with Brown regarding the complaint that had been filed via the Ethics Point Hotline, and to take her statement regarding the nature of her relationship with Johnson. Brown told McDonald and Grimes that she had been dating Johnson, had tried to end the relationship, but had continued to date him because "he ha[d] the right to impact [her] career." D. App. 94. She stated that the last time she had seen Johnson was the Friday

- 4 -

before Labor Day.  She also stated that King had been harassing her about her relationship with Johnson, and that she had a restraining order against King.

The next day, McDonald and Grimes met with Johnson, who provided his statement about the relationship, at times directly contradicting Brown.  Johnson told McDonald and Grimes that he believed Brown had keyed his car and that she had come into his apartment uninvited a few days before, on September 11.  Johnson also provided them a police report that he had filed pertaining to the damage to his car and a recording of his meeting with Brown at the gas station, which had occurred the prior day.  McDonald and Grimes listened to the recording, which revealed what they perceived to be inconsistencies between Brown's statements and what the recording indicated.  In the recording, it appeared that Johnson, not Brown, wanted to end the relationship.  The recording also revealed that Brown had seen Johnson more recently than the Friday before Labor Day, as she had claimed, because she had seen him on September 11, when she went to his apartment uninvited.  The recording suggested that Johnson did not throw his phones at Brown, but that Brown took the phones when King called, and that Johnson asked Brown to return his phones, but she refused.  The recording also revealed that Brown had acted with hostility toward King.

On September 18 McDonald and Grimes met with Brown a second time.  Without informing her of the existence of the recording, they asked her questions regarding her meeting with Johnson based on what they heard on the recording.  Brown confirmed she had met with Johnson at the gas station, but she maintained that she was the one who wanted to end the relationship, not Johnson.  When asked to produce the restraining order against King,

Brown stated that she misunderstood, and that she had not been able to obtain one.  She denied taking Johnson's phones, and she told McDonald and Grimes that she had no reason to contact Johnson in the future.

On September 24, 2013 McDonald concluded his investigation.  He found a number of inconsistencies between Brown's statements and the contents of the recording, including: Brown alleged that the meeting had taken place in her car, but the recording reflected that it had occurred outdoors until Brown got into Johnson's car; Brown claimed that Johnson threw his phones at her, but the recording suggested that she had taken the phones and refused to return them; Brown stated that the last time she had had contact with Johnson outside of work was before Labor Day, but the recording reflected that she had visited him at his home uninvited on September 11; and Brown alleged that the conversation at the gas station related to her attempt to end her relationship with Johnson, but the recording indicated that it was Johnson who was attempting to end the relationship.  McDonald stated in his report that Brown had represented during the investigation that she had filed a restraining order against King, but when asked to produce the document, she could not, and she stated that she misunderstood.  McDonald concluded that Brown and Johnson had been in a relationship that had since ended; that there was no evidence supporting Brown's claim that Johnson would harm her career if she did not continue the relationship; and that evidence supported Johnson's claim that he wanted out of the relationship.  McDonald also concluded that Brown had made multiple statements during the course of the investigation that proved to be false and misleading, in violation of FMC's principles of integrity.  McDonald stated

that, absent the false statements made in the investigation, no corrective action would have been taken other than to warn both Brown and Johnson to avoid contact with each other for anything other than professional reasons.  But McDonald concluded that Brown had made false and misleading statements during the investigation that represented a serious lapse of judgment and integrity.  Considering the short period of time that Brown had been employed by FMC and the egregiousness of the conduct, McDonald recommended that FMC terminate Brown's employment.

On September 30, 2013 McDonald and Skau met with Brown.  They informed her that they had reviewed the text messages, voicemail messages, and the recording of her meeting with Johnson.  On October 1, 2013 FMC terminated Brown's employment.

Brown filed this suit against FMC alleging claims for a hostile work environment and retaliation under Title VII.  FMC moves for summary judgment and for leave to file an amended answer.  Brown opposes both motions.

II

Because Brown will bear the burden of proof on her claims at trial, FMC can meet its summary judgment obligations by pointing to the absence of admissible evidence to support the claim in question.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once FMC does so, Brown must go beyond her pleadings and designate specific facts showing that there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the opposing party's favor.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Brown's failure to produce proof as to any essential element of a claim renders all other facts immaterial.  *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.) (citations omitted).  Summary judgment is mandatory if Brown fails to meet this burden.  *See Little*, 37 F.3d at 1076.

III

The court turns first to Brown's hostile work environment claim.

A

"A hostile work environment exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)).  To prove a hostile work environment claim based on sex, Brown must establish the following:

> (1) [she] belongs to a protected group; (2) [she] was subject to unwelcome sexual harassment; (3) The harassment complained of was based upon sex; (4) The harassment complained of affected a "term, condition or privilege of employment," *i.e.*, the sexual harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment; and (5) Responde[a]t superior, *i.e.*, that the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999) (on rehearing) (citing *Jones v. Flagship Int'l*, 793 F.2d 714, 719-20 (5th Cir. 1986)).  "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination because of

- 8 -

sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (internal quotation marks and ellipses omitted). "The 'critical issue' in determining whether workplace activities constitute harassment based on sex is 'whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" *Reine v. Honeywell Int'l Inc.*, 362 Fed. Appx. 395, 397 (5th Cir. 2010) (per curiam) (quoting *Oncale*, 523 U.S. at 80). "Title VII is not a shield against harsh treatment at the workplace; it protects only in instances of harshness disparately distributed." *Id.* (quoting *Jackson v. City of Killeen*, 654 F.2d 1181, 1186 (5th Cir. 1981)).

FMC contends that Brown's hostile work environment claim fails because she has failed to show: (1) that any alleged harassment was based on her sex or gender; (2) that the alleged conduct constitutes severe or pervasive sexual harassment; and (3) that FMC knew or should have known about the alleged harassment and failed to take prompt remedial action. The court need only consider FMC's first argument.

B

FMC argues that Brown cannot establish a case of hostile work environment based on sexual harassment because Brown has presented no evidence indicating that the conduct she complains of was directed at her because of her gender or sex. FMC contends that the conduct Brown complains of is simply related to a lovers' quarrel and does not constitute inappropriate workplace conduct based on Brown's gender. Brown responds that she can show that the harassing conduct of which she complains was based on her sex because a reasonable jury could find that she would not have been subjected to a compulsory

relationship if she were a male.  She also relies on King's conduct as evidence of harassment based on her sex or gender.

The conduct of Johnson on which Brown relies all arises out of their unsuccessful romantic relationship that undisputedly began as a consensual one.  Regardless whether there are fact issues about who wanted to end the relationship or what occurred between Brown and Johnson as their relationship devolved into acrimony, a reasonable jury could only find that Johnson's allegedly harassing actions toward Brown arose from their failed personal relationship.  "[C]ourts often find that harassment by a co-worker is not considered to be 'based on sex' when it arises from a failed relationship."  *Conklin v. County of Suffolk*, 859 F.Supp.2d 415, 428 (E.D.N.Y. 2012) (citing *Succar v. Dade Cnty. Sch. Bd.*, 229 F.3d 1343, 1345 (11th Cir. 2000) ("Lorenz's harassment of [plaintiff] was motivated not by his male gender, but rather by Lorenz's contempt for [plaintiff] following their failed relationship; [plaintiff's] gender was merely coincidental."); *Galloway v. Gen. Motors Serv. Parts Operations*, 78 F.3d 1164, 1168 (7th Cir. 1996)).  Of course, a prior failed relationship between an accused harasser and an alleged victim does not insulate an alleged harasser from a finding of sexual harassment.  *See, e.g., Forrest v. Brinker Int'l Payroll Co.*, 511 F.3d 225, 229 (1st Cir. 2007) (explaining that regardless of factors such as a prior intimate relationship, improper gender bias can be inferred from conduct, and if harassing conduct is gender-based, Title VII's requirement that harassment be based upon sex is satisfied).  But absent evidence that the harassing conduct was in fact gender- or sex-based, there is no violation of Title VII.  "[T]he mere fact that two co-workers had an 'affair gone wrong' does not in itself turn sex-

- 10 -

neutral harassment into harassment based on sex." *Perez v. MCI World Com Commc'ns*, 154 F.Supp.2d 932, 942 (N.D. Tex. 2001) (Buchmeyer, C.J.).

In *Perez* Chief Judge Buchmeyer considered whether a pattern of abusive and harassing behavior described by the plaintiff was based on sex, as required to state a claim under Title VII for a sexually hostile work environment. *Id.* at 940. The plaintiff stated that she and the alleged harasser had been involved in a romantic relationship, but that beginning around the time of their breakup, the alleged harasser engaged in the following behavior: "stalking, constantly calling the plaintiff, improperly obtaining personal information about the plaintiff from [her employer], breaking into the plaintiff's home and destroying her antique furniture, and enlisting a new girlfriend to call the plaintiff and bother her." *Perez*, 154 F.Supp.2d at 934-35. Chief Judge Buchmeyer reasoned that the harassment described by the plaintiff was sex-neutral—there was no evidence that the behavior was intended to elicit sexual relations, or "that the abuse itself had any sexual overtones, that any sexual language was used, or that [the alleged harasser] attempted to use the plaintiff's female sex as a means of harassing her." *Id.* at 942. He held that the plaintiff had failed to demonstrate the existence of a genuine issue of material fact regarding whether the alleged harassment was based on sex. *Id.*

Similarly, in *Underwood v. East Texas State University*, 1998 WL 204624 (N.D. Tex. Apr. 15, 1998) (Fish, J.), a plaintiff filed suit against her employer after she was terminated, alleging that a coworker had failed to support her reappointment to a tenure-track position and had orchestrated a campaign against her because she had previously terminated a sexual

relationship with him.  *Id.* at *2.  Judge Fish concluded that the plaintiff had failed to demonstrate gender discrimination in the reappointment process, because she had not presented evidence that her coworker's conduct "was based on her refusal to engage in a strictly sexual relationship with him."  *Id.* at *4.  He noted, that, "[a]lthough dating within the workplace is neither wise nor prudent, it is not always and everywhere illegal," and that the plaintiff was still required to "produce actual proof of discrimination to prevail."  *Id.*

In *Succar* the Eleventh Circuit considered whether summary judgment had been properly granted dismissing the hostile work environment claim of a plaintiff who had alleged that, he concluded a sexual relationship with a coworker, the coworker had verbally and physically harassed and embarrassed him in front of his colleagues and students.  *Succar*, 229 F.3d at 1344.  The panel affirmed the summary judgment, concluding that the coworker's harassment was not the result of plaintiff's gender, "but of responses to an individual because of her former intimate place in that individual's life."  *Id.* at 1345 (citation and brackets omitted).  The coworker's "harassment of [the plaintiff] was motivated not by his male gender, but rather by [the coworker's] contempt for [the plaintiff] following their failed relationship; [the plaintiff's] gender was merely coincidental."  *Id.*

In this case, Brown has not produced any evidence that would enable a reasonable jury to find that Johnson's allegedly harassing conduct was directed at her because of her female sex or gender.  Brown alleges that Johnson sexually harassed her by forcing her into a compulsory romantic relationship with him, and by threatening to negatively impact her

- 12 -

career should she end the relationship,[3] and that King harassed her by sending her emails and text messages and by confronting her at FMC's corporate HR location.  Brown does not cite to any evidence that would enable a reasonable jury to find that Johnson or King acted this way toward Brown because she is a female.  There is no evidence, for example, that either Johnson or King used sexually degrading, gender-specific epithets toward her, or that Johnson propositioned Brown for sex, or sought sexual favors from her, or commented on her sex life in the work place, or promoted a sexually charged environment.  *See, e.g., Pfeil v. Intecom Telecomms.*, 90 F.Supp.2d 742, 750 (N.D. Tex. 2000) (Lindsay, J.).  Assuming *arguendo* that Brown can otherwise satisfy the requirements for a hostile work environment claim, the evidence would only enable a reasonable jury to find that the actions of Johnson and King toward Brown were motivated by the failed romantic relationship between Johnson and Brown.  There is simply no evidence that Johnson and King's actions stemmed from any animus based on Brown's female gender or sex.

The court holds that Brown has failed to produce proof that she was harassed based on her sex or gender, and has therefore failed to meet her summary judgment burden.  Accordingly, the court grants FMC's motion for summary judgment and dismisses Brown's hostile work environment claim.

---

[3]This allegation is more akin to what has been termed "quid pro quo" sexual harassment rather than hostile work environment harassment.  Brown does not allege a "quid pro quo" claim.

IV

The court now turns to Brown's retaliation claim.

A

Title VII prohibits employers from retaliating against employees who engage in an activity protected under the act. 42 U.S.C. § 2000e-3(a).[4]   Because Brown relies on circumstantial evidence to support this claim, she must proceed under the *McDonnell Douglas* burden shifting framework.  *See Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) ("A retaliation claim that is premised on a pretextual rationale for dismissal is analyzed under the *McDonnell Douglas* framework.").

Brown must first demonstrate a prima facie case for retaliation by showing that (1) she engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action.  *See, e.g., Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *9 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)).  As to the third element, the requirement that a plaintiff show at the prima facie case stage a "causal link" between a protected activity and an adverse employment action is "much less stringent"

---

[4]42 U.S.C. § 2000e–3(a) provides, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

than the "but-for" causation that a jury must find. *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001); see also *Khanna v. Park Place Motorcars of Hous., Ltd.*, 2000 WL 1801850, at *4 (N.D. Tex. Dec. 6, 2000) (Fitzwater, J.) (characterizing this prima facie case burden as "minimal").

If Brown establishes a prima facie case, the burden shifts to FMC to articulate a legitimate, nonretaliatory reason for the alleged retaliatory action taken. *Walker*, 2005 WL 2278080, at *9. This burden is one of production, not of proof. *See Wooten v. Fed. Express Corp.*, 2007 WL 63609, at *16 (N.D. Tex. Jan. 9, 2007) (Fitzwater, J.), *aff'd*, 325 Fed. Appx. 297 (5th Cir. 2009).

If FMC meets its production burden, the burden shifts back to Brown to produce evidence that would enable a reasonable jury to find that retaliation for Brown's protected conduct, rather than FMC's proffered legitimate, nonretaliatory reason, was the "but-for" cause" of her termination. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ___ U.S. ___, 133 S.Ct. 2517, 2528 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."); *see also, e.g., Coleman v. Jason Pharms.*, 540 Fed. Appx. 302, 304 (5th Cir. 2013) (per curiam) ("An employee establishes pretext by showing that the adverse action would not have occurred 'but for' the employer's retaliatory reason for the action." (citing *Nassar*, 133 S.Ct. at 2533-34)). "In order to avoid summary judgment, [Brown] must show 'a conflict in substantial evidence' on the question of whether [FMC] would not have taken the action 'but for' the protected activity." *Coleman*, 540 Fed. Appx. at 304 (quoting *Long*, 88 F.3d at 308).

- 15 -

B

FMC contends that it is entitled to summary judgment because, *inter alia*, Brown has failed to adduce evidence that she engaged in a protected activity. FMC posits that in reporting the harassment to FMC, Brown never alleged that the harassment was based on sex or her gender. Brown responds that she did engage in a protected activity when she complained to her supervisor (Skau) and to McDonald about Johnson and King's allegedly harassing behavior.

Protected activities under Title VII "include (1) opposing any practice deemed an unlawful employment practice (the 'opposition clause') or (2) making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII (the 'participation clause')." *Johnson v. BAE Sys. Land & Armamaments, L.P.*, 2014 WL 1714487, at *14 (N.D. Tex. Apr. 30, 2014) (Fitzwater, C.J.) (quoting *Armstrong v. K & B La. Corp.*, 488 Fed. Appx. 779, 781 (5th Cir. 2012) (per curiam) (internal quotation marks omitted)). Because Brown did not participate in any investigation, proceeding, or hearing under Title VII that is relevant here, Brown's case rests solely on the opposition clause. "The underlying practice need not actually be illegal, but the employee must at least reasonably believe that it is." *Arrieta v. Yellow Transp., Inc.*, 2008 WL 5220569, at *16 (N.D. Tex. Dec. 12, 2008) (Fitzwater, C.J.) (citing *Long*, 88 F.3d at 304). The Fifth Circuit has "consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." *Davis v. Dall. Indep. Sch. Dist.*, 448 Fed. Appx. 485, 493 (5th Cir. 2011) (per curiam) (citing *Tratree v. BP*

*N. Am. Pipelines, Inc.*, 277 Fed. Appx. 390, 395 (5th Cir. 2008) ("Complaining about unfair treatment without specifying why the treatment is unfair . . . is not protected activity."); *Harris-Childs v. Medco Health Solutions, Inc.*, 169 Fed. Appx. 913, 916 (5th Cir. 2006) (per curiam) (affirming summary judgment on retaliation claim where plaintiff never "specifically complained of racial or sexual harassment, only harassment"); *Moore v. United Parcel Serv., Inc.*, 150 Fed. Appx. 315, 319 (5th Cir. 2005) (per curiam) ("[Plaintiff] . . . was not engaged in a protected activity, as his grievance did not oppose or protest racial discrimination or any other unlawful employment practice under Title VII."); *Evans v. Tex. Dep't of Transp.*, 547 F.Supp.2d 626, 654 (E.D. Tex. 2007) (holding that plaintiff did not show that she engaged in statutorily protected activity where, although she complained of purportedly hostile work environment, she at no time suggested that the conduct was related to her race, sex, or other characteristic protected by Title VII)). "Merely complaining about a 'hostile work environment' does 'not itself constitute protected activity within the meaning of Title VII, as this complaint lack[s] a racial or gender basis.'" *Cole v. Pearland Indep. Sch. Dist.*, 2013 WL 4494423, at *10 (S.D. Tex. Mar. 21, 2013) (quoting *Davis*, 448 Fed. Appx. at 493). "Magic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Zimmerman v. Gruma Corp.*, 2013 WL 3154118, at *16 (N.D. Tex. June 21, 2013) (Lindsay, J.) (quoting *Brown v. United Parcel Serv., Inc.*, 406 Fed. Appx. 837, 840 (5th Cir. 2010)).

## C

FMC contends that Brown's complaints to McDonald and Skau do not constitute

- 17 -

protected activity for purposes of Title VII.  The court agrees.  Brown concedes that she never made a complaint of sexual harassment to FMC regarding her relationship with Johnson.  When she reported the allegedly harassing conduct to McDonald and Skau, she never stated that she believed the harassment was based on her sex, gender, race, or any other protected characteristic.  Brown informed FMC through McDonald and Skau that she was dating Johnson, that she had broken off the relationship when Johnson was dating another woman, that Johnson would call her and she would make excuses not to see him, that Johnson refused to leave her alone, that Johnson threatened to affect her career if she broke up with him, and that King had been harassing her.  At no point, however, did Brown mention that the harassment was based on her sex or her gender, nor did she make any reference to an unlawful employment practice.  Brown was not obligated to use "magic words" or even to refer to Title VII itself.  But she was at least required to alert her employer to her reasonable belief that she was opposing unlawful conduct.  Because a reasonable jury could not find in her favor in this respect, the court grants FMC's motion for summary judgment dismissing her Title VII retaliation claim.

V

Because the court is granting FMC's motion for summary judgment, it denies as moot FMC's motion for leave to file a first amended answer.

\*     \*     \*

For the reasons explained, the court grants FMC's motion for summary judgment, denies as moot FMC's motion for leave to file a first amended answer, and dismisses this

action with prejudice by judgment filed today.

      **SO ORDERED**.

July 9, 2015.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE